UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: UNASSIGNED

_____

)
NISSAN NORTH AMERICA, INC., dba NISSAN USA,    )
)
      Plaintiff,    )
)
      v.    )    Ct. No. 26-01246
)
THE UNITED STATES OF AMERICA; UNITED    )
STATES DEPARTMENT OF HOMELAND    )
SECURITY; KRISTI NOEM, in her official    )
capacity as Secretary of the Department of    )
Homeland Security; U.S. CUSTOMS AND    )
 BORDER PROTECTION; RODNEY S. SCOTT,    )
in his official capacity as Commissioner of U.S.    )
Customs and Border Protection; OFFICE OF THE    )
UNITED STATES TRADE REPRESENTATIVE;    )
JAMIESON GREER, in his official capacity as    )
United States Trade Representative; U. S.    )
DEPARTMENT OF THE TREASURY; and    )
SCOTT BESSENT, in his official capacity as    )
Secretary of the Treasury,    )
)
      Defendants.    )
_____)

## **COMPLAINT**

### **INTRODUCTION**

    Plaintiff Nissan North America, Inc., dba Nissan USA ("Nissan North America"), by and

through its attorneys, alleges and states as follows:

    1.      Beginning in February 2025 and continuing until being declared unlawful in

February 2026, new substantial tariffs were imposed on goods imported into the United States

from nearly every foreign country, including multiple countries from which Plaintiff sources its

imports.  These tariffs had been imposed under the asserted authority of the International

Emergency Economic Powers Act ("IEEPA").  As a result, Plaintiff has paid significant IEEPA tariffs on certain imported articles from many countries.

2.    The United States Supreme Court on February 20, 2026, conclusively held that IEEPA does not authorize the President to impose tariffs, including the challenged tariffs.  *See Learning Resources, Inc. v. Trump*, No. 124-1287, slip op. (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).  Accordingly, the IEEPA tariffs imposed and duties paid on Plaintiff's imports made since February 2025 were unlawfully imposed.

3.    Consistent with the holding in *Learning Resources*, this action specifically contests Defendants' imposition of IEEPA tariffs on Plaintiff's imported merchandise pursuant to the following Executive Orders, as amended or modified (collectively referred to in this complaint as the "Challenged IEEPA Tariff Orders"): 1/

  (A)    Executive Order 14193 of February 1, 2025, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 1, 2025), as amended or modified; 2/

  (B)    Executive Order 14194 of February 1, 2025, Imposing Duties To Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb. 1, 2025), as amended or modified; 3/

---

1/    We refer to the Executive Orders (A)-(E) as the "Prior Challenged IEEPA Tariff Orders"; these are the Executive Orders that were found unlawful by the Supreme Court in the *Learning Resources* decision.  We refer to the Executive Orders (F)-(G) as the "Later Challenged IEEPA Tariff Orders"; these are orders which were promulgated after initiation of the *Learning Resources* and *V.O.S. Selections* litigations.

2/    *See* Executive Order 14197, 90 Fed. Reg. 9,183 (Feb. 10, 2025); Executive Order 14226, 90 Fed. Reg. 11,369 (Mar. 6, 2025); Executive Order 14231, 90 Fed. Reg. 11,785 (Mar. 11, 2025); Executive Order 14325, 90 Fed. Reg. 37,957 (Aug. 6, 2025).

3/    *See* Executive Order 14198 of February 3, 2025, Progress on the Situation at Our Southern Border, 90 Fed. Reg. 9,185 (Feb. 10, 2025); Executive Order 14227 of March 2, 2025, Amendment to Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 11,371 (Feb. 10, 2025); Executive Order 14232 of March 6, 2025, Amendment to Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 11,787 (Mar. 11, 2025).

(C)    Executive Order 14195 of February 1, 2025, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 1, 2025), as amended or modified; 4/

(E)    Executive Order 14257 of April 2, 2025, Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 2, 2025), as amended or modified; 5/

(F)    Executive Order 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment, 90 Fed. Reg. 15,625 (Apr. 9, 2025); 6/

(G)    Executive Order 14323 of July 30, 2025, Addressing Threats to the United States by the Government of Brazil, 90 Fed. Reg. 37,739 (July 30, 2025); and

(H)    Executive Order 14329 of August 6, 2025, Addressing Threats to the United States by the Government of the Russian Federation, 90 Fed. Reg. 38,701 (Aug. 11, 2025).

4.    The President variously directed the Secretary of Commerce and the United States

Trade Representative, in consultation with the Secretary of Homeland Security, acting through the

Commissioner of U.S. Customs and Border Protection ("CBP") and the Chair of the United States

International Trade Commission, to make modifications to the Harmonized Tariff Schedule of the

---

4/    *See* Executive Order 14228 of March 3, 2025, Further Amendment to Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Mar. 7, 2025).

5/    *See* Executive Order 14200 of February 5, 2025, Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,277 (Feb. 11, 2025); Executive Order 14259 of April 8, 2025, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China, 90 Fed. Reg. 15,509 (April 14, 2025); Executive Order 14298 of May 12, 2025, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China, 90 Fed. Reg. 21,831 (May 21, 2025); Executive Order 14326 of July 31, 2025, Further Modifying Reciprocal Tariffs, 90 Fed. Reg. 37,963 (Aug. 6, 2025); Executive Order 14334 of August 11, 2025, Further Modifying Reciprocal Tariffs to Reflect Ongoing Discussions With the People's Republic of China, 90 Fed. Reg. 39,305 (Aug. 14, 2025); Executive Order 14358 of November 4, 2025, Modifying Reciprocal Tariff Rates Consistent with the Economic and Trade Arrangement Between the United States and the People's Republic of China, 90 Fed. Reg. 50,729 (Nov. 7, 2025).

6/    Executive Order 14316 of July 7, 2025, Extending the Modification of the Reciprocal Tariff Rates, 90 Fed. Reg. 30,823 (July 10, 2025).

United States ("HTSUS") to effectuate the Executive Orders listed above, including adopting rules and regulations or other agency actions necessary to implement the orders. 7/

5.    The Challenged IEEPA Tariff Orders established in the HTSUS added many new additional dutiable "secondary" subheading provisions under Subchapter III of Chapter 99 of the HTSUS.

6.    Under direction of the Challenged IEEPA Tariff Orders, CBP also filed certain *Federal Register* notices amending the HTSUS to reflect various new tariffs, among other actions. 8/    CBP also issued certain Guidance through its Cargo Systems Messaging System ("CSMS") to inform importers of various tariff changes. 9/

---

7/    *See, e.g.,* Executive Order 14194, 90 Fed. Reg. at 9,118; Executive Order 14195, 90 Fed. Reg. at 9,123; Executive Order 14257, 90 Fed. Reg. at 15,048; Executive Order 14266, 90 Fed. Reg. 15,627; Executive Order 14323, 90 Fed. Reg. at 37,741-42; Executive Order 14329, 90 Fed. Reg. at 38,703.

8/    *See, e.g.*, *Notice of Implementation of Additional Duties on Products of Mexico Pursuant to the President's Executive Order 14194, Imposing Duties To Address the Situation at Our Southern Border,* 90 Fed. Reg. 21,487 (U.S. Customs & Border Protection May 20, 2025); *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,426 U.S. Customs & Border Protection Mar. 6, 2025); *Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14256, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China As Applied to Low-Value Imports,* 90 Fed. Reg. 17,608 (U.S. Customs & Border Protection Apr. 28, 2025); *Notice of Implementation of Additional Duties on Products of India Pursuant to the President's Executive Order 14329, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 41,837 (U.S. Customs & Border Protection Aug. 27, 2025).

9/    *See, e.g.,* CSMS # 63988468 - GUIDANCE: Additional Duties on Imports from China (Feb. 3, 2025); CSMS # 64297292 - GUIDANCE: Additional Duties on Imports from Mexico (March 3, 2023); CSMS # 64649265 - GUIDANCE – Reciprocal Tariffs, April 5, 2025 Effective Date (Apr. 4, 2025); CSMS # 64687696 - UPDATED GUIDANCE – Reciprocal Tariffs on Goods of China, April 9, 2025, Effective Date (Apr. 8, 2025); CSMS # 66027027 - Guidance-Additional Duties on Imports from India (Aug. 25, 2025); CSMS # 66871909 - UPDATE: Agricultural Products Exempted from Brazil Tariffs (Nov. 21, 2025).

7.     Through this court action, Plaintiff asks this Court to follow and implement the Supreme Court's holding in *Learning Resources* that the tariffs imposed under Executive Order Nos. 14193, 14194, 14195, 14228, 14257, and 14266 are unlawful because they are all promulgated pursuant to IEEPA, a statute that "do[es] not authorize tariffs."  *See Learning Resources, Inc. v. Trump*, No. 124-1287, slip op. at 20 (U.S. Feb. 20, 2026).  Plaintiff further asks this Court to hold that the tariffs imposed under Executive Order Nos. 14323 and 14329, and their amendments and modifications, which likewise were issued under IEEPA, are unlawful for the same reasons.  As such, the collection of any IEEPA duties collected under those additional Executive Orders was also unlawful.

8.     This separate action is necessary because Plaintiff has already paid IEEPA tariffs and may not be assured of a refund for those unlawfully collected tariffs in the absence of its own judgment and judicial relief.  In particular, the Supreme Court has affirmed the Federal Circuit decision in *V.O.S. Selections* but has provided no instructions as to how Plaintiff may obtain a refund (with interest) for the unlawfully collected tariffs.

9.     This action is necessary now because Plaintiff has paid IEEPA tariffs on a number of entries that will continue to liquidate and could become final as a matter of law.  Additionally, Executive Orders 14323 and 14329, (referred to as the "Later Challenged IEEPA Tariff Orders"), were promulgated after the *Learning Resources* and *V.O.S. Selections* litigations were initiated and are not addressed directly by the Supreme Court's decision.  Plaintiff thus seeks a decision from this Court as to their validity consistent with the Supreme Court's holding in *Learning Resources*.

10.     Plaintiff seeks relief through this action to obtain complete refunds (with interest) on (A) all IEEPA tariffs paid to date, and (B) all IEEPA tariffs that may be charged or retained in the future as further entries liquidate.

11.     Accordingly, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor, including the following relief, *inter alia*: (A) a declaration that the Challenged IEEPA Tariff Orders are unlawful; (B) a declaration that all IEEPA duties paid by Plaintiff were collected *ultra vires*; (C) the reliquidation of any liquidated entries for which Plaintiff paid IEEPA duties; and (D) a full monetary refund, inclusive of interest as authorized under law, from Defendants of all IEEPA tariffs Plaintiff has paid to the United States as a result of the Challenged IEEPA Tariff Orders.

## JURISDICTION

12.     The CIT holds subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the CIT over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B). As the CIT held in its opinion in the *V.O.S. Selections* case:

> The Federal Circuit has confirmed that presidential action creates an appropriate basis for (i) jurisdiction, noting without disapproval that there are 'numerous cases in which the Court of International Trade has . . . considered challenges to the actions of the President pursuant to the grant of jurisdiction in § 1581(i).'…This means that Plaintiffs' various challenges to the presidential actions…successful or not, fall under the court's exclusive jurisdiction.

772 F. Supp. 3d at 1366—67 (citing *Humane Soc'y of United States v. Clinton*, 236 F.3d 1320, 1327 (Fed. Cir. 2001) (*citing, inter alia, Luggage & Leather Goods Mfrs. of Am., Inc. v. United States*, 588 F. Supp. 1413 (Fed. Cir. 1984) and *U.S. Cane Sugar Refiners' Ass'n v. Block*, 544 F. Supp. 883 (Fed. Cir. 1982)). The CIT has the same powers at law, in equity, and as conferred by statute as a United States district court. 28 U.S.C. § 1585. Under 28 U.S.C. § 1581, in a civil action, the CIT

can enter a money judgment against the United States and can order "any other form of relief that is appropriate in a civil action," including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. § 2643(a)(1), (c)(1).

13.    The U.S. Supreme Court "agree[s] with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the CIT." *Learning Resources, Inc. v. Trump*, No. 124-1287, slip op. at 5, n.1 (U.S. Feb. 20, 2026). The Court reasoned that the "challenges 'arise[] out of' modifications to the HTSUS." *Id.* It continued, "[w]here, as here, such modifications are made under an 'Act[] affecting import treatment, 19 U.S.C. § 2483, they are considered to be statutory provisions of law." *Id.* "Thus, the plaintiffs' challenges 'arise out of [a] law of the United States providing for tariffs.'" *Id.*

## TIMELINESS OF THE ACTION

14.    Plaintiff commenced this action by filing a summons and complaint with this Court on February 26, 2026. This action has been commenced within two years of the challenged actions of Defendants, thereby satisfying the timeliness requirement of 19 U.S.C. § 1621.

## PARTIES

15.    Plaintiff Nissan North America, Inc., dba Nissan USA ("Nissan North America"), is a leading automotive manufacturer and distributor offering a full lineup of Nissan vehicles, including sedans, SUVs, trucks, and electric models. The company manufactures vehicles and powertrains at multiple U.S. facilities, including plants in Smyrna and Decherd, Tennessee, and Canton, Mississippi, and supports a nationwide network of more than 1,000 Nissan dealerships across the United States. Nissan North America's parent company was founded in 1933 in Japan, and Nissan North America remains headquartered in Franklin, Tennessee. Nissan North America employs more than 15,000 people in the United States.

16.     Defendant United States of America is the federal government of the United States of America.

17.     Defendant Department of Homeland Security ("DHS") is an agency of the United States federal government.

18.     Defendant Kristi Noem is the Secretary of DHS and is sued in her official capacity.

19.     Defendant United States Customs and Border Protection ("CBP") is an agency within the DHS and is headquartered in Washington, D.C.  CBP is responsible, among other functions, for border security and the collection of tariffs, duties, and taxes on goods imported into the United States.

20.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

21.     Defendant Office of the United States Trade Representative is the federal agency primarily responsible for developing U.S. trade policy.

22.     Defendant Jamieson Greer is the United States Trade Representative and is sued in his official capacity.

23.     Defendant Department of the Treasury is the federal agency primarily responsible for the national fiscal policy and is where the revenue from the challenged actions is deposited.

24.     Defendant Scott Bessent is the Secretary of the Treasury and is sued in his official capacity.

## **STANDING**

25.     To establish standing, a plaintiff must show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560—61 (1992).  Plaintiff is harmed by the Challenged IEEPA Tariff Orders because Plaintiff is the importer of record for articles

imported into the United States from countries subject to the unlawful IEEPA tariffs as implemented and collected by Defendants. As a result of the Executive Orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and has suffered attendant injury. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiffs, the plaintiffs have suffered a concrete injury in fact under Article III."); *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 599 (2007) ("being forced to pay" money to the government "causes a real and immediate economic injury"). Declaratory relief from this Court would redress those injuries.

26.     As of the date of this complaint, Plaintiff has paid significant IEEPA tariffs imposed by the Challenged IEEPA Tariff Orders and, as a result, has suffered economic injury. Plaintiff thus has standing to bring this lawsuit.

## GOVERNING LAW

27.     IEEPA, 50 U.S.C. § 1702(a)(1)(B), provides that the President may:

> investigate, block during the pendency of any investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . .

28.     IEEPA further provides that these actions "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for the purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

29.     The text of IEEPA does not employ the word "tariff" or any term of equivalent meaning.

30.    Section 605 of the Trade Act of 1974 provides that "[t]he President shall from time to time, as appropriate, embody in the HTSUS the substance of the relevant provisions of this chapter, and of other Acts affecting import treatment, and actions thereunder, including removal, modification, continuance, or imposition of any rate or duty or other import restriction."  19 U.S.C. § 2483.

31.    The National Emergencies Act, 50 U.S.C. § 1601 et seq. (the "NEA"), provides the general framework for declarations of national emergencies.  The NEA requires that "[w]hen the President declares a national emergency, no powers or authorities made available by statute for use in the event of an emergency shall be exercised unless and until the President specifies the provisions of law under which he proposes that he, or other officers will act."  50 U.S.C. § 1631.

32.    The President may "confiscate" the property of a foreign person or country that also is subject to U.S. jurisdiction only when the United States is engaged in "armed hostilities" or has been attacked by a foreign country.  50 U.S.C. § 1702(a)(1)(C).

## STATEMENT OF FACTS

## I.    THE PRESIDENT ORDERS A SERIES OF TARIFFS, INVOKING IEEPA

33.    On February 1, 2025, the President issued three Executive Orders imposing tariffs on articles imported from Canada, Mexico, and China.  The tariffs were in addition to the ordinary customs duties previously imposed on articles imported from these three substantial U.S. trading partners.

34.    Each Executive Order invoked IEEPA as authorizing the tariffs and proclaimed national emergencies to justify IEEPA's use.

35.    The Executive Order directed at Mexico, Executive Order 14194 of February 1, 2025, Imposing Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb.

7, 2025) ("Mexico Tariff Order"), imposes an additional 25% *ad valorem* tariff on certain articles from Mexico. The President's claim of emergency power was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organization], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

36.    The Executive Order directed at Canada, Executive Order 14193 of February 1, 2025, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("Canada Tariff Order"), declared an emergency based on alleged opioid and human trafficking. Executive Order 14193 imposes a 25% *ad valorem* tariff on certain articles from Canada, with certain exceptions.

37.    The Executive Order directed at China, Executive Order 14195 of February 1, 2025, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7. 2025) ("China Tariff Order"), also declared an emergency based on alleged opioid trafficking, determining that "the sustained influx of synthetic opioids" is a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." *Id.* at 9,121. The President's claim of emergency power in Executive Order 14195 was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.* Executive Order 14195 imposed an additional 10% *ad valorem* tariff on articles from China imported into the United States. *Id.*

38.    On February 5, 2025, the President issued Executive Order 14200 of February 5, 2025, Amendment to Duties Addressing the Synthetic Opioid Supply chain in the People's Republic of China, 90 Fed. Reg. 9,277 (Feb. 11, 2025) ("February 5 Amendment").

39.    On March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228 of March 3, 2025, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment").  The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by stating that "the PRC has not taken adequate steps to alleviate the illicit drug crisis." *Id.* at 11,463.

40.    On April 2, 2025, citing U.S. trade deficits with its trading partners as a national emergency, the President issued Executive Order 14257 of April 2, 2025, Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7. 2025) ("Reciprocal Tariff Order").  The Reciprocal Tariff Order imposed a 10% *ad valorem* baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9.  *Id.* at 15,041.  These higher country-specific tariffs range from 11% to 50% *ad valorem.  Id.*

41.    The Reciprocal Tariff Order states that "U.S. trading partners' economic policies . . . suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id.*

42.    On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on imports from China by 50 percentage points—from 34% to 84% *ad valorem*.  Executive Order 14259 of April 8, 2025, Amendment to Reciprocal Tariffs and

Updated Duties as Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

43.    The next day, April 9, 2025, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125% *ad valorem*.  Executive Order 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment, 90 Fed. Reg. 15,625 (Apr. 15, 2025).  Meanwhile, the 20% *ad valorem* trafficking tariff on imported articles from China remained in place, such that most imports from China faced an IEEPA tariff of at least 145% *ad valorem*.

44.    In implementing this Executive Order-based tariff regime, Defendants administered changes to the HTSUS, requiring that goods subject to the challenged IEEPA tariffs be entered under new tariff codes.

45.    On April 14, 2025, several companies filed an action in the CIT challenging the legality of certain Executive Orders promulgated pursuant to IEEPA.  *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2).  The CIT held that the Prior Challenged IEEPA Tariff Orders are unlawful.  *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).  The Federal Circuit, sitting *en banc*, affirmed.  *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025).  The U.S. Supreme Court held that IEEPA does not authorize the President to impose the challenged tariffs.  *See Learning Resources, Inc. v. Trump*, No. 124-1287, slip op. (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

46.    Since the *V.O.S. Selections* complaint was filed, the President has invoked IEEPA and issued more Executive Orders, imposing additional tariffs and modifying others.  On July 30,

2025, the President issued Executive Order 14323 of July 30, 2025, Addressing Threats to the United States by the Government of Brazil, 90 Fed. Reg. 37,739 (Aug. 5, 2025), which imposed an additional 40% *ad valorem* tariff on imports from Brazil. This Executive Order cited the political prosecution of former President Jair Bolsonaro as "an unusual and extraordinary threat" to justify this additional tariff. *Id.*

47. On August 6, 2025, the President issued Executive Order 14329 of August 6, 2025, Addressing Threats to the United States by the Government of the Russian Federation, 90 Fed. Reg. 38,701 (Aug. 11, 2025). This Executive Order imposed an additional 25% *ad valorem* tariff on imports from India for "directly or indirectly importing Russian Federation oil." *Id.*

48. Plaintiff contests the Challenged IEEPA Tariff Orders, which affect the tariff rates on articles imported from the countries with which Plaintiff does business and for which Plaintiff paid tariffs (thus causing Plaintiff injury).

## II.    CBP IMPLEMENTS THE UNLAWFUL TARIFFS

49. CBP is charged with the assessment and collection of import charges, tariffs, and duties, including IEEPA tariffs. 19 U.S.C. §§ 1500, 1502; 6 U.S.C. § 212.

50. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted a new tariff nomenclature: the HTSUS. Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, and its subheadings provide particularized divisions of the goods within each category. *Id.*

51.     The Challenged IEEPA Tariff Orders are effectuated through Chapter 99 of the HTSUS.  Chapter 99 of the HTSUS includes various provisions established based on "temporary legislation" and "temporary modifications established pursuant to trade legislation," among other provisions.  HTSUS, USITC Pub No. 5684 at Chapter 99 (Nov. 2025).  The provisions of Chapter 99 effectuating the Challenged IEEPA Tariff Orders require U.S. importers to declare their entries as subject to the tariffs and dictate the applicable tariff rates.  As noted above, the Challenged IEEPA Tariff Orders established many new additional dutiable "secondary" subheading provisions under Subchapter III of Chapter 99 of the HTSUS.

52.     CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS.  19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

53.     The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders.  19 U.S.C. §§ 1202, 3005, 3006; *see Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378—79 (Ct. Int'l Trade 2021).

54.     When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

## III.    THE CIT, THE CAFC, AND THE U.S. SUPREME COURT HAVE HELD THAT IEEPA DOES NOT AUTHORIZE THE CHALLENGED TARIFFS

55.     The Challenged IEEPA Tariff Orders claim authority solely from the following laws: (A) IEEPA, 50 U.S.C. § 1701 *et seq.*; (B) the National Emergencies Act, 50 U.S.C. § 1601

*et seq.*; (C) section 604 of the Trade Act of 1974, as amended; (D) 19 U.S.C. § 2483; and (E) 3 U.S.C. § 301.

56.     On May 28, 2025, a three-judge panel of the CIT granted summary judgment to the plaintiffs in *V.O.S. Selections* and the plaintiffs in *Oregon, et al.* and permanently enjoined the government from enforcing IEEPA tariffs at issue in those cases.  *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).  That decision was appealed to the U.S. Court of Appeals for the Federal Circuit.

57.     The Federal Circuit stayed enforcement of the CIT's decision and injunction and ordered an expedited briefing schedule and hearing.  Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming the CIT's decision that IEEPA tariffs are unlawful.  *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

58.     In a separate lawsuit filed by a distinct group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort.  *See Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025).  That decision was appealed to the U.S. Court of Appeals for the D.C. Circuit.  Prior to the D.C. Circuit holding argument, however, the U.S. Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.  The cases were consolidated, with argument on November 5, 2025.

59.     On February 20, 2026, the U.S. Supreme Court affirmed the Federal Circuit's holding.  *See Learning Resources, Inc. v. Trump*, No. 124-1287, slip op. (U.S. Feb. 20, 2026).  The Court concluded "the terms of IEEPA do not authorize tariffs."  *Id.* at 20.

## IV.    PLAINTIFF HAS PAID IEEPA TARIFFS ON ENTRIES THAT HAVE LIQUIDATED AND/OR THAT WILL SOON LIQUIDATE

60.     "Liquidation" means "the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1.

61.     Typically, when goods enter the United States (*i.e.*, when they are imported), the U.S. importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods.  *See* 19 U.S. C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

62.     CBP then fixes the final appraisement of merchandise by confirming the final value, classification, tariff and duty rates, and final amounts of tariffs and duties for the imported goods. 19 U.S.C. § 1500.

63.     Once the final amount of tariffs and/or duties is determined, CBP "liquidates" the entry and ordinarily notifies the importer of record as to whether it owes more money or is entitled to a refund.  19 U.S.C. § 1504(b).  It is not until the entries liquidate that the duties are deposited into the U.S. Treasury.

64.     Liquidation—unless extended—must happen within one year of the date of entry or the entry will liquidate automatically by operation of law.  19 U.S.C. § 1504(a).  CBP typically liquidates entries 314 days after the date of entry of the goods and will usually post a notice of liquidation on its website.

65.     Once liquidation has occurred, an importer of record has 180 days to file a protest contesting an adverse CBP determination relating to that liquidation with which the importer disagrees.  19 U.S.C. § 1514(a). 10/  Not all decisions that culminate at liquidation, however, are

---

10/     CBP also may voluntarily reliquidate entries within 90 days of liquidation.  19 U.S.C. § 1501.

able to be protested.  For example, CBP's imposition of a tariff (or duty) cannot be protested where CBP acts in a ministerial capacity (i.e., without discretion) in imposing that tariff (or duty).  *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024) ("[T]his court has consistently held that 'merely ministerial' actions are not protestable under [section] 1514.'  This is because unlike typical § 1514(a) decisions that involve substantive determinations, Customs lacks discretion when 'merely follow[ing] [ ]instructions.'" (quoting *Mitsubishi Elec. Am., Inc. v. United States*, 44 F.3d 973, 976—77 (Fed. Cir. 1994)).

66.    This Court has recognized that it has "explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, Slip Op. 25-154, at 6 (Ct. Int'l Trade Dec. 15, 2025) (quoting *In re Sec. 301 Cases*, 524 F. Supp. 3d 1355, 1365—66 (Ct. Int'l Trade 2021)).  Further, this Court has reasoned that the Government's position—agreeing it "will not object to the [c]ourt ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful"— estops the Government from taking an inconsistent approach following a final result in *V.O.S Selections.  See AGS Co. Auto. Sols.,* Slip Op. 25-154, at 6 (citing Def.'s Resp. in Opp'n to Pls.' Mot. For a Prelim. Inj., at 3, *AGS Co. Auto. Sols.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025)).

67.    As of the date of this complaint, Plaintiff has paid significant IEEPA tariffs imposed by the Challenged IEEPA Tariff Orders.  These tariffs arise out of Plaintiff's imports from several different countries, including, but not limited to, Brazil, Canada, China, India, Mexico, and others.

68.    Plaintiff continues to be required to pay IEEPA tariffs on certain of its entries that have not yet liquidated.

69.    Certain entries for which Plaintiff paid IEEPA tariffs imposed by the Challenged Tariff Orders have already begun to liquidate as of March 2025 and will continue to liquidate in the immediate future.

## STATEMENT OF CLAIMS

## COUNT ONE

### The International Emergency Economic Powers Act, 50 U.S.C. § 1701 et. seq. does not provide a lawful basis for the tariffs imposed under the Prior Challenged IEEPA Tariff Orders

70.    Paragraphs 1 through 69 are incorporated by reference.

71.    The U.S. Supreme Court has conclusively held that IEEPA does not authorize the President to impose tariffs.  *See Learning Resources, Inc. v. Trump*, No. 124-1287, slip op. (U.S. Feb. 20, 2026).  Presented with the question of "whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs," the U.S. Supreme Court clearly stated, "[i]t does not."  *Id.* at 16.

72.    Rather, the Justices explained that IEEPA only authorizes the President to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit . . . importation or exportation."  *Id.* at 14. (citing 50 U.S.C. § 1702(a)(1)(B)).  "Absent from this lengthy list of powers is any mention of tariffs or duties . . . It stands to reason that had Congress intended to convey the distinct and extraordinary power to impose tariffs, it would have done so expressly—as it consistently has in other tariff statutes."  *Id.* The Supreme Court thus concluded "the terms of IEEPA do not authorize tariffs."  *Id.* at 20.

73.    The Prior Challenged IEEPA Tariff Orders are the same as those struck down by the Supreme Court in *Learning Resources, Inc.*  For the same reasons set forth by the Supreme Court in *Learning Resources*, the Prior Challenged IEEPA Tariff Orders exceed the President's

statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

74.    Plaintiff respectfully requests that this Court apply its precedent and the decision of the Supreme Court, declare the Prior Challenged IEEPA Tariff Orders unlawful as to Plaintiff, order reliquidation of all liquidated entries for which Plaintiff paid IEEPA duties, enjoin Defendants from enforcing all IEEPA duties as to Plaintiff, and order refunds of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT TWO

**The International Emergency Economic Powers Act, 50 U.S.C. § 1701 et. seq.,
does not provide a lawful basis for the tariffs imposed under the
Later Challenged IEEPA Tariff Orders**

75.    Paragraphs 1 through 74 are incorporated by reference.

76.    As stated above, the U.S. Supreme Court held that IEEPA does not authorize the President to impose tariffs.  *See Learning Resources, Inc. v. Trump*, No. 124-1287, slip op. (U.S. Feb. 20, 2026).  Presented with the question of "whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs," the Supreme Court clearly stated, "[i]t does not."  *Id.* at 16.

77.    Rather, the Justices explained that IEEPA only authorizes the President to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit . . . importation or exportation."  *Id.* at 14. (citing 50 U.S.C. § 1702(a)(1)(B)).  "Absent from this lengthy list of powers is any mention of tariffs or duties . . . It stands to reason that had Congress intended to convey the distinct and extraordinary power to impose tariffs, it would have done so expressly—as it consistently has in other tariff statutes."  *Id.* The Supreme Court concluded "the terms of IEEPA do not authorize tariffs."  *Id.* at 20.

78.     While the Later Challenged IEEPA Orders are different orders from those challenged in *Learning Resources*, they were similarly promulgated pursuant to the President's purported authority under IEEPA.  The Supreme Court has clearly held that "the terms of IEEPA do not authorize tariffs."  *Id.* at 20.  For the same reasons set forth in *Learning Resources*, the Later Challenged IEEPA Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

79.     Plaintiff respectfully requests that the CIT apply its precedent and the decision of the Supreme Court to declare the Later Challenged IEEPA Tariff Orders unlawful as to Plaintiff, order reliquidation of all liquidated entries for which Plaintiff paid IEEPA duties, enjoin Defendants from enforcing all IEEPA duties as to Plaintiff,  and order refunds of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT THREE

## DECLARATORY RELIEF, 28 U.S.C. § 2201

80.     Paragraphs 1 through 79 are incorporated by reference.

81.     Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration."  28 U.S.C. § 2201(a).

82.     Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of Defendants to implement and collect the resulting tariffs.

83.     Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA tariffs as a result of the Challenged IEEPA Tariff Orders on articles it has imported into the United States from several different countries, including, but not limited to, Brazil, Canada, China, India, Mexico, and others.

84.    This Court can exercise its equitable power to enter a declaratory judgment that the Challenged IEEPA Tariff Orders are unlawful for any of the above reasons, that Defendants lack authority to implement and collect the resulting tariffs, as to Plaintiff, and that all liquidated entries on which Plaintiff paid IEEPA duties should be reliquidated and duties paid refunded with interest. It should do so.

\*      \*      \*

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

(1)    declare that the Defendants lack the authority under IEEPA to impose tariffs;

(2)    declare that the Challenged IEEPA Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

(3)    declare that, with respect to Plaintiff, Defendants lack authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged IEEPA Tariff Orders;

(4)    with respect to Plaintiff, permanently enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged IEEPA Tariff Orders;

(5)    reliquidate all liquidated entries on which Plaintiff paid IEEPA duties;

(6)    order the United States to refund to Plaintiff IEEPA duties collected on those entries, with interest as provided by law;

(7)    award Plaintiff its reasonable costs, including attorney's fees, incurred in bringing this action; and

(8)     grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Jared R. Wessel

Katherine B. Wellington
HOGAN LOVELLS US LLP
125 High Street
Suite 2010
Boston, MA 02110
(617) 702-7745
katherine.wellington@hoganlovells.com

Jared R. Wessel
Craig A. Lewis
Jonathan T. Stoel
Mayur Patel
Joshua E. Kurland*
Michael G. Jacobson
Nicholas R. Sparks
Nicholas W. Laneville
Emma T. Hunter*
Maria A. Arboleda
Lindsay K. Brown
Gregory M.A. Hawkins

*DC Bar application pending,
practice pursuant to Rule
49(c)(3), DC Courts, and
supervised by DC Bar members.

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6472
jared.wessel@hoganlovells.com

*Counsel to Nissan North America, Inc., dba
Nissan USA*

Date: February 26, 2026